UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

RUBEN HERNANDEZ, A/K/A
"CARA DE LOCO,"
"CARLOS RIVERA,"

                Defendant.

------------------------------------X

04 Cr. 57-01  (RWS)

SENTENCING OPINION

**Sweet, D.J.**

        On December 16, 2009, Ruben Hernandez, a/k/a "Cara De Loco," a/k/a "Carlos Rivera," ("Hernandez" or "Defendant") pleaded guilty to one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951, three counts of robbery in violation of 18 U.S.C. § 1951, and one count of using a firearm during robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  For the reasons set forth below, Hernandez will be sentenced to 181 months' imprisonment to be followed by three years' supervised release.  Hernandez will also be required to pay a special assessment of $500.

1

**Prior Proceedings**

On December 16, 2009, Indictment 04 CR 57-01 (RWS) was filed in the Southern District of New York. Count 1 charges that from at least 2001 up to and including December 22, 2003, in the Southern District of New York the District of Puerto Rico, and elsewhere, Hernandez agreed with co-conspirators not named as defendants herein to commit robberies of commercial establishments in both New York and Puerto Rico, in violation of 18 U.S.C. § 1951. Counts 2-4 charge that, in District of Puerto Rico, Hernandez and co-conspirators not named as defendants herein, committed the following robberies and attempted robberies of commercial establishments in violation of 18 U.S.C. § 1951:

| Count | Approximate Date | General Location/Victim | Item(s) Stolen |
|-------|------------------|-------------------------|----------------|
| 2 | July 19, 2002 | Centro Ahorros Supermarket, Puerto Novo, Puerto Rico | Nothing |
| 3 | August 7, 2002 | CM Express, Puerto Rico | Currency |
| 4 | September 25, 2002 | Juliu's Restaurant, Puerto Novo, Puerto Rico | Currency |

Count 5 charges that from at least 2001 up to and including December 22, 2003, in the Southern District of New York, the District of Puerto Rico, and elsewhere, Hernandez, during and in relation to the robbery conspiracy charged in Count 1 of the

Information, did use and carry firearms and, in furtherance of such crime, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which were brandished, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

On December 16, 2009, Hernandez appeared before the Honorable James C. Francis in the Southern District of New York and allocuted to Counts 1-5.

On December 2, 2010, the Court received a letter dated November 28, 2010 from Defendant's counsel requesting that the Court be lenient when imposing a sentence in light of Defendant's personal history and the nature and circumstances of his participation in the offense.  The Court has also received several letters from Defendant's family and friends describing Defendant as a good person.

On December 7, 2010, the Court received an undated letter from Defendant describing his family background and personal history and conveying remorse for his offense.

Hernandez's sentencing is currently scheduled for December 9, 2010.

3

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —

4

> (A)   the applicable category of offense committed
>        by the applicable category of defendant as
>        set forth in the guidelines . . .;
>
> (5)   any pertinent policy statement . . . [issued
>        by the Sentencing Commission];
>
> (6)   the need to avoid unwarranted sentence
>        disparities among defendants with similar
>        records who have been found guilty of
>        similar conduct; and
>
> (7)   the need to provide restitution to any victims of
>        the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.


**The Defendant**


The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Hernandez's personal and family history.


**The Offense Conduct**


The following description draws from the PSR.  The specific facts of the underlying conduct are adopted as set

forth in that report.

Count 1

        The following information is based on a complaint
prepared by a Detective with the Bronx Robbery Unit of the New
York Police Department ("NYPD").  As part of the investigation,
the Detective spoke with an individual ("Victim 1") and learned
that at approximately 9:15 p.m. on August 9, 2003, Victim 1
responded to a woman knocking on his door at his Bronx apartment
("the Apartment"), and saw two men, one of whom Victim 1 later
identified as Hernandez, force their way inside the apartment.

        Hernandez and the other man grabbed Victim 1 and
pushed Victim 1 into his living room while both men yelled,
"Where is the money? Where is the money?"  Once inside the
Apartment, Hernandez pulled out a handgun and struck Victim 1's
head with the butt of the gun.  A short time later, Victim 1 saw
Hernandez holding a bottle in one hand and the handgun in the
other hand Hernandez repeatedly struck Victim 1's head with both
the bottle and the gun.

        When Victim 1 attempted to resist, Hernandez called to
the other man and stated that Victim 1 was trying to grab the

6

gun.  The second man then went to Victim 1 and bound Victim 1's legs and arms with tape.

Victim 1 then saw the second man go to the kitchen and return with a knife in his hand. Upon returning to Victim 1, the second man slashed Victim 1 with the knife approximately four times, cutting both of Victim 1's hands.

A short time later, Hernandez and the second man went into Victim 1's bedroom and returned with a television, video cassette recorder and radio.  Hernandez and the second man then placed these items in a bag and left the Apartment with the bag. Hernandez and the second man then returned to the Apartment and removed money from Victim 1's dresser.

On August 11, 2003, an NYPD detective spoke with a confidential informant ("CI"), and the CI stated that he knew who committed the robbery at the Apartment: (1) a man named "Ruben" from the Dominican Republic, who is also known as "Cara De Loco"; (2) a woman, the wife of "Ruben," who knocked on the front door of the Apartment so that the other two men could gain entry; (3) a third person ("CC-1"); and (4) a man who waited in

a green Jeep vehicle bearing a Rhode Island license plate ("CC-2").  CI also provided the license plate number.

From subsequent investigation, it was learned that the Rhode Island license plate number provided by CI was registered to a green Jeep Cherokee.

On October 30, 2003, the Detective interviewed CC-1 with another NYPD Detective who was fluent in Spanish.  After being advised of his Miranda rights, CC-1 voluntarily waived those rights and agreed to answer questions asked by law enforcement personnel.  CC-1 stated that on August 9, at about 9 P.M., CC-1 went with a man named "Ruben," a woman who was "Ruben's wife," and another man to collect money from a man who owed "Ruben" money.

CC-1 and "Ruben" went inside the apartment and asked a man where the money was.  "Ruben" attacked the man inside the apartment, hitting the man with a bottle and a gun.

On November 10, 2003, the Detective interviewed CC-2 with another NYPD Detective who was fluent in Spanish.  After being advised of his Miranda rights, CC-2 voluntarily waived

those rights and agreed to answer questions asked by law enforcement personnel.  CC-2 stated that CC-2 had sold "Ruben" a 1993 Jeep Cherokee, and "Ruben" asked CC-2 to drive him in the Jeep Cherokee to a location so that "Ruben" could collect some money.

CC-2 drove "Ruben" to pick up Ruben's girlfriend and one other person, and then drove to Grand Avenue.  "Ruben" said that he had a weapon and that the location they were going to rob would have a lot of money and drugs inside.

CC-2 waited outside with the car while "Ruben" and the others left the car and went inside the building that housed the Apartment.  "Ruben" and the others were gone for approximately fifteen to twenty minutes and then returned to the car.  After "Ruben" and the others returned, CC-2 drove them back to "Ruben's" house, where "Ruben" gave CC-2 $2,600.

On November 24, 2003, Victim 1 positively identified a photographic mugshot of Hernandez as one of the men who forced himself into the Apartment and robbed him and as the man who struck him in the head with a gun.

9

23. In November 2003, CC-2 informed the Detective that the man named "Ruben" who committed the robbery lived at 1231 Virginia Avenue in the Bronx.  CC-2 also provided the Detective with a photograph of "Ruben".  The Detective had seen Hernandez and believed that the photograph CC-2 gave him was a photograph of Hernandez.

On November 24, 2003, the Detective went to 1231 Virginia Avenue in the Bronx and spoke with Hernandez, with another NYPD Officer who was fluent in Spanish.  After being advised of his Miranda rights, Hernandez voluntarily waived those rights and agreed to answer questions asked by law enforcement personnel.  Hernandez stated, among other things, that he was inside Victim 1's Apartment on August 9, 2003, but stated that he tried to defend himself from Victim 1.

Based on the foregoing, a criminal complaint was filed against Hernandez on December 18, 2003 and an arrest warrant was issued.  Hernandez was arrested on December 22, 2003.

Count 2

Hernandez is charged with the July 19, 2002 robbery of the Centro Ahorros Supermarket, located in Puerto Nuevo, Puerto Rico.  According to information provided by the Government, a crew of robbers, including Hernandez, went into the supermarket, brandished guns, and announced a robbery.  There was a struggle with a patron and they ended up fleeing without taking anything.

Count 3

Hernandez is charged with the August 7, 2002 robbery of CM Express, located in Puerto Rico.  According to information provided by the Government, a crew of robbers, including Hernandez, approached people exiting the bank, brandished guns, and took a briefcase containing about $46,000.  They fled in a car.  The victim was the owner of a business and the briefcase contained the proceeds of the business.  The victim was also with a bodyguard who may have fired shots at the crew.

Count 4

Hernandez is charged with the September 25, 2002 robbery of Juliu's Restaurant, located in Puerto Nuevo, Puerto Rico.  According to information provided by the Government, a

11

crew of robbers, including Hernandez, went into the restaurant, brandished guns, and announced a robbery.  They made the patrons lie down on the floor and took their money.  They also robbed the establishment, including slot machines, and made off with approximately $2,000-$3,000.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 1951, the maximum term of imprisonment for each of Counts 1-4 is 20 years' imprisonment. Pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), the mandatory minimum term of imprisonment for Count 5 is seven years and the maximum term is life.   This term of imprisonment must be served consecutively to any other sentence.

If a sentence of imprisonment is imposed, the Court may impose a maximum term of supervised release of three years for Counts 1-4, pursuant to 18 U.S.C. § 3583(b)(2), and a maximum term of supervised release of five years for Count 5, pursuant to 18 U.S.C. § 3583(b)(1).

Defendant is not eligible for probation for Counts 1-4

12

because he is being sentenced at the same time to a term of imprisonment on Count 5, pursuant to 18 U.S.C. § 3561(a)(3). Defendant is not eligible for probation for Count 5 because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 18 U.S.C. § 924(c)(1)(A)(ii).

The maximum fine that may be imposed for each of Counts 1-5 is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Count 1 charges Defendant with conspiring to commit robberies, including those which are specifically charged in

13

Counts 2-4. These counts are specifically excluded from grouping under § 3D1.2. Therefore, separate computations will be performed for each individual robbery. With respect to Count 5, pursuant to § 2K2.4(b), the Guideline sentence is the minimum term of imprisonment required by statute. Therefore, Guideline calculations do not need to be performed for this count.

Count 1

The guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1(a), which provides a base offense level of 20. Since Defendant brandished a firearm during the offense, a five-level increase in the offense level is warranted, pursuant to § 2B3.1(b)(2)(C).

The victim in this count suffered physical injury as he was repeatedly struck in the head with a bottle and gun. Pursuant to § 2B3.1(b)(4)(B), a two-point increase is warranted.

The victim in this count was physically restrained during the robbery as his legs and arms were bound with tape. Pursuant to § 2B3.1(b)(3)(A), a two-point increase is warranted.

14

Count 2

The guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1(a), which provides a base offense level of 20. Since Defendant brandished a firearm during the offense, a five-level increase in the offense level is warranted, pursuant to § 2B3.1(b)(2)(C).

Count 3

The guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1(a), which provides a base offense level of 20. Since Defendant brandished a firearm during the offense, a five-level increase in the offense level is warranted, pursuant to § 2B3.1(b)(2)(C).

Since the amount of money taken during this robbery was approximately $46,000, and therefore exceeded $10,000, a one-point increase in the offense level is warranted, pursuant to § 2B3.1(b)(7)(B).

Count 4

The guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1(a), which provides a base offense level of 20. Since Defendant brandished a firearm during the offense, a five-level increase in the offense level is warranted, pursuant to § 2B3.1(b)(2)(C).

Multiple Count Adjustment

Pursuant to § 3D1.4, a multiple count adjustment is warranted. The adjusted offense level for Count 1 is 29, adding one unit. The adjusted offense level for Count 2 is 25, adding one unit. The adjusted offense level for Count 3 is 26, adding one unit. The adjusted offense level for Count 4 is 25, adding one unit. These four units warrant a four-point increase in the offense level from the greater of the adjusted offense levels (29 for Count 1). This leads to a combined adjusted offense level of 33.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Defendant also gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources

efficiently.    In   light   of   these   factors   and   because   the
aforementioned  base  offense  level  is  greater  than  16,   the
offense  level  is  reduced  by  three  levels,  pursuant  to  § 3E1.1(a)
and  § 3E1.1(b).

Accordingly,  the  applicable  offense  level  is  30.

According  to  the  FBI  and  the  New  York  State  Division
of   Criminal   Justice   Services,   Bureau   of   Identification,
Defendant  has  no  prior  criminal  convictions  and  therefore  has
zero  criminal  history  points.

A  total  of  zero  criminal  history  points  establishes  a
Criminal  History  Category  of  I,  pursuant  to  the  table  at  Chapter
5,  Part  A,  of  the  Guidelines.

Based  on  a  total  offense  level  of  30  and  a  Criminal
History  Category  of  I,  the  Guidelines  range  for  imprisonment  is
97  to  121  months.    A  seven-year  mandatory  consecutive  term  of
imprisonment  must  also  be  imposed  on  Count  5.

For  Counts  1-4,  the  Guidelines  range  for  a  term  of
supervised   release   is   two   to   three   years,   pursuant   to

§ 5D1.2(a)(2).  For Count 5, the Guidelines range for a term of supervised release is three to five years, pursuant to § 5D1.2(a)(1).  If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b).  Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

For Counts 1-4, Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on Count 5, pursuant to § 5B1.1(b)(3).  For Count 5, Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $15,000 to $150,000, pursuant to § 5E1.2(c)(3)(A).  Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used

18

for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.   In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

## The Sentence

For the Counts 1-4, Hernandez will be sentenced to 97 months' imprisonment per count, to run concurrently.   For Count

19

5, Hernandez will be sentenced to 7 years' imprisonment to run consecutively with the term of imprisonment sentenced for Counts 1-4.

For Counts 1-4, Hernandez will be sentenced to 3 years' supervised release on each count, to run concurrently. For Count 5, Hernandez will be sentenced to 3 years' supervised release to run concurrently with the term of supervised release sentenced             for             Counts             1-4.

Hernandez is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release.  It is recommended that Hernandez be supervised by the district of his residence.

As mandatory conditions of his supervised release, Hernandez shall:  (1) not commit another federal, state, or local crime; (2) not illegally possess or use a controlled substance; (3) not possess a firearm or destructive device; and (4) submit to one drug testing within 15 days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

20

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)   Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2)   Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.   The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(3)   If not otherwise gainfully employed, Defendant shall participate in a program of educational or vocational training to enhance marketable job skills and shall complete the requirements for a General Equivalency Diploma (GED).

In consideration of all the factors set forth in 18

21

U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $500, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 9, 2010.

It is so ordered.

New York, NY
December   8   , 2010

ROBERT W. SWEET
U.S.D.J.

22